## Marston *vs.* Commonwealth.

### APPEAL FROM CAMPBELL CIRCUIT.

1. A judgment of the circuit court will not be reversed for "an error in not setting aside an indictment, or in overruling a demurrer thereto." (*Crim. Code, sec.* 349.)

2. A person knowingly permitting the games of "euchre," "rounce," "Kossuth," or other game at which liquor, cigars, "treats," or money or property, however small in value, are won and lost, to be played in his coffee house, subjects himself to the penalty prescribed by *Rev. Stat. chap.* 42, *sec.* 10, *page* 390.)

[The facts of the case appear in the opinion of the court.] REP.

*J. R. Hallam* for appellant—

The appellant was indicted under the 10*th sec. chap.* 42 *Rev. Stat. page* 390.

The appellant demurred to the indictment, which was overruled.

The proof was, in substance, that persons visiting the coffee-house of the appellant had frequently bet "treats" upon the result of games of "euchre," &c.

The appellant offered no evidence, but asked the court to instruct the jury to find for the defendant, which being refused, he asked the court to instruct the jury "that games played to determine who should ' treat to liquor or cigars, is not gaming, within the ' meaning of the statute under which the indictment ' was found, &c.;" this was also refused by the court, who, thereupon, upon the motion of the attorney for the Commonwealth, instructed the jury as follows:

"If the jury find from the evidence, that the defen-' dant, knowing the same, permitted in a house kept ' by him in this county, at or about the time as ' charged in the indictment, any game to be played ' at which money or property was won and lost, they

' should find him guilty, and fix his punishment by a ' fine of not less than $200 nor more than $500. It ' matters not how small the amount of money or val- ' ue of property that may have been won or lost. ' Beer or cigars, if won or lost on a game played ' in the house of defendant, by his permission, is ' sufficient to authorize a verdict against him."

The orders of the court overruling the instructions asked by the defendant, and the instructions given on behalf of the Commonwealth, were excepted to, at the time, and the verdict of the jury was rendered, finding the defendant guilty, and assessing his fine at $200. A motion was made in arrest of judgment, upon the ground that the facts stated in the indictment do not constitute a public offense, within the jurisdiction of the court, which was overruled, and the order overruling it excepted to. A new trial was then moved for, upon the following grounds:

"1. The court erred in refusing the instructions ' asked by the defendant.

' 2. The court erred in instructing the jury.

' 3. The verdict is contrary to law and against ev- ' idence."

Which was overruled, and the order overruling the motion excepted to; and the case brought up for the revision of this court.

The errors of the circuit court, overruling the demurrer, and the motion in arrest of judgment, are questions upon the face of the indictment, and it is desired to call the attention of the court to the wording of that instrument in connection with the language of the Statute. But first, so far as the demurrer is concerned, the langage of the indictment is indirect and uncertain as to the particular circumstances of the offense charged. It charges the defendant in the alternative, with permitting gaming "in his house, *or* "on premises in his occupation, and under his control," each of which, under the statute, is an ingredient of the offense, in itself, and the allegation

of one or the other is necessary to constitute a complete offense. The manner in which the indictment is worded, will not enable a person of common understanding to know whether it is intended to charge the defendant with permitting gaming at his dwelling, or in some other house or place in his occupation, or under his control. (*Criminal Code, secs.* 121, 123.)

It is assumed, that in order to constitute an offense under the statute, it is necessary that there should be a game played—that money or property should be won or lost on that game, and that it should have been suffered by the defendant to have been played on his premises. If a game were played on which money or property *might* have been won or lost, but was not, it would not be an offense. Now, the indictment here, although in the language of the statute, does not alledge that money or property *was* won or lost upon the game which it is charged the defendant suffered to be played upon his premises, and there is, therefore, no complete offense, within the jurisdiction of the court, charged. The indictment does say that the defendant "suffered a game at ' which money or property *is* won and lost to be ' played," &c. In common parlance, a person, speaking of the game of "euchre," which is mentioned in the record, would, doubtless, say, it is a game of cards, at which money or property *is* won or lost, meaning, thereby, that it is a gambler's game; nevertheless, the game may be, and frequently is played for amusement only, and at not all the games of "euchre" is money or property won and lost.

The word "*is*," as used in the indictment, does not, according to the common and approved usage of language, convey to the mind the idea that at the particular game suffered by the defendant to be played on his premises, money or property *was* won and lost; and words must be construed according to the common and approved usage of language. (*Revised Stat-*

*utes,* 190.) As there must be an actual winning or loosing at the game to constitute the offense, and as in this case no such actual winning or loosing is alledged, there is no public offense charged, and it was error to overrule the demurrer, and the judgment ought to have been arrested. (*Crim. Code, sec.* 271.)

The statute under which the indictment was found, is intended to apply only to such games as are played for gambling purposes, for money or property, in which the object of the players is gain. It will hardly bear such a construction as would make it apply to games of amusement, or the comparatively harmless games usually played in public, to determine who shall bear the burden of a treat which it is proposed shall take place. However much such games may be the offspring of idleness aad dissipation, and, in a moral point of view, indefensible in themselves, they are unaccompanied by that depraved avarice and vicious desire to appropriate, without consideration, the money or property of another to one's own use, which characterize the gambling games, in which the gamesters risk the "hazard of the die" for gain. And it is at the more vicious class of games that the legislature has aimed, and, doubtless, for a wise purpose; the blow must fall upon such as give to the gamesters shelter and a place in which to play.

It has been clearly intimated by this court, in the. case of *Ritte vs. Commonwealth,* (*M. S. Opinion Summer Term,* '57,) that the 6th section of the chapter of the Revised Statutes, on the subject of gaming, in which chapter, the section under which this indictment was found is contained, was not intended to apply to a "*Bagatelle table*" set up and ordinarily used ·for games to determine who should pay for beer or cigars to be used by the players, although that section is very broad in denouncing the setting up of any "gaming table, machine, or contrivance used ' in betting, or other game of chance, whereby ' money or other thing is, or may be won or lost."

The reasoning of the minds of the court which produced this intimation, is doubtless, that in the playing to determine which of the players should stand treat, there is no betting, and nothing really either won or lost by the game, although the treat may be furnished, and paid for by the looser of the game. To constitute a betting and a winning and loosing, there must be something staked or depending, which passes from one to the other of the gamblers. Such is not the case where two persons in a drinking saloon determine that they will drink together, and in order to amuse themselves, play a game which decides who is to pay for the drinks, which they both use. There is nothing passing from one to the other there; there is nothing won, and there is nothing lost, except the time spent in the game, and that both lose. It surely is not a gaming for gain, within the meaning of the Statute.

Nothing can be properly determined from the evidence in this case, but that the defendant permitted in a public sitting and reading room, attached to his coffee house, certain persons to play at games of cards and dice, for amusement, and by which the players decided among themselves, who of them should pay for the liquor and cigars, furnished them by the defendant. The law does not make this an offense, and therefore it was error in the circuit court, to refuse the first instruction asked by defendant.

*James Harlan,* Attorney General, for the commonwealth—

The evidence, as contained in the bill of exceptions, proved that defendant was the keeper of a coffee-house in the city of Newport, and retailed spirituous liquors. All of the witnesses said they had seen the games of "euchre," "rounce," and "Kossuth" played in the house of defendant, with his knowledge, for cigars and liquor.

MARSTON
*vs.*
COMMONWEALTH

And the question is, whether that constitutes gaming within the meaning of the law? The circuit court ruled the question in the affirmative, and I think properly. The amount of the money or value of the property bet and staked, won and lost, makes no difference—it is *gaming* within the letter and spirit of the statute. The language of the statute is, "whoever shall suffer *any game whatever*, at which *' money or property* is *won or lost*, to be played in a ' house, boat, or float, or on premises in his occupa-' tion or under his control, shall be fined from $200 to ' $500 for each offense." (*Rev. Stat.* 369, *sec.* 10.) It seems to me the case was clearly proved to authorize a judgment against the defendant.

Dec. 8, 1857.

Judge STITES delivered the opinion of the court.

Marston was indicted for permitting games, at which money and property was won and lost, to be played in his house, in violation of the Revised Statutes, (*chap.* 42, § 10.) A demurrer to the indictment was overruled, and upon trial he was found guilty, and his fine assessed by the jury at two hundred dollars, for which sum a judgment was rendered against him.

A new trial was moved upon the following grounds: 1st. That the court erred in granting, and in refusing, instructions to the jury. And 2d. That the verdict was contrary to law and the evidence. This motion was overruled and Marston has appealed.

The grounds for a new trial below are relied on for reversal here; and it is also complained that the circuit court erred in overruling the demurrer to the indictment.

With regard to the action of the circuit court in overruling the demurrer it is sufficient to say, that the Criminal Code, (*sec.* 349,) provides that a judgment shall not be reversed for "an error in not setting ' aside an indictment or in overruling a demurrer ' thereto."

'1. A judgment of the circuit court will not be reversed for "an error in not setting aside an indictment, ʳor in overruling a

The proof conduces very clearly to show that appellant, who kept a coffee-house or liquor shop, permitted games of cards and dice, such as "euchre," "rounce," and "Kossuth," at which liquor and cigars or "treats" were won and lost, to be played in his house; indeed, it appears to have been a place of resort for that purpose.

The statute neither discriminates as to the amount of money, nor the value of property, won or lost, but declares that "whoever shall suffer any game what-' ever, at which money or property is won or lost, to be ' played in a house, boat, or float, or on premises under ' his control, shall be fined from two hundred to five ' hundred dollars for each offense." The obvious intent of the provision was to suppress a pernicious and ruinous vice, by prohibiting gambling houses of any description, whether upon a large or small scale. And the court properly instructed the jury, that if the defendant knowingly permitted games at which money or property was won or lost to be played in his house; and money, however small in amount, or property, however small in value, was, with his knowledge and permission, won or lost at such games, that he came within the inhibitions of the statute.

The instruction asked for by appellant, containing the converse of the instruction granted, was, according to the view already expressed, obviously erroneous, and properly refused.

The case of *Ritte vs. The Commonwealth*, (*June term*, 1857,) presented altogether a different question, and is not in point.

The inquiry in that case was, whether the bagatelle table or machine used by those who frequented the house, came within the description of tables, machines, or contrivances denounced in the 6th section of the same chapter, *supra*, under which Ritte was indicted, and not as to the amount of money or value of property won or lost necessary to constitute gambling.

MARSTON
*vs.*
COMMONWEALTH

demurrer thereto." (*Criminal Code, sec.* 349.)

2. A person knowingly permitting the games of "euchre," 'rounce,' "Kossuth," or other game at which liquor, cigars, 'treats,' or money or property, however small in value, are won and lost, to be played in his coffeehouse, subjects himself to the penalty prescribed by *Rev. Stat. chap.* 42, *sec.* 10, *page* 390.

We perceive no error in the record of which the defendant can rightfully complain, and the judgment must stand.

Judgment *affirmed.*